**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel@edge.law
Seth W. Wiener (SBN 203747)
seth@edge.law
1341 La Playa Street 20
San Francisco, CA 94122
Telephone: (415) 515-4809

Attorneys for Plaintiff
HARSH ALKUTKAR

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARSH ALKUTKAR, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>BUMBLE INC. and BUMBLE HOLDING LIMITED,<br><br>                    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Harsh Alkutkar ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants Bumble Inc. and Bumble Holding Limited (together "Bumble" or "Defendants"). Upon personal knowledge as to his own acts and status and upon information and belief as to all other matters, Plaintiff alleges the following:

## INTRODUCTION

1.      This is a class action against Bumble for false advertising on its popular dating software application ("app") called Bumble. The app works by allowing users to create their own profile, with photos and information about themselves. Bumble then presents users with other user profiles on which users can 'swipe' left or right to 'like' or 'dislike' the other user. When two users mutually swipe right on one another's profile, they 'match.' After two users match, Bumble creates a private line of communication between the users, after which they can start a 'conversation.'

2.      Bumble is unique among the dating apps because on Bumble, "women make the first move" and "men cannot initiate a conversation with women."[1] To increase the likelihood of matching with another user, Bumble advertises premium features that users can purchase.

3.      Two examples of such features are "Spotlights" and "SuperSwipes." To induce users to purchase Spotlights, Bumble advertises that users will receive "**Up to 10x more matches**." To induce users to purchase SuperSwipes, Bumble advertises that users will receive "**Up to 10x more conversations**." Users understand "10x more conversations" to mean they will receive ten times more matches because a match is required before a conversation can start.

---

[1] Source: https://bumble.com/help/why-can-t-i-start-a-conversation-with-somebody-i-ve-swiped-right-on, last visited January 21, 2022.




4.      The claims that Spotlights and SuperSwipes provide up to ten times more matches and conversations are gross exaggerations of the actual benefits these features provide. Indeed, even Bumble's website and official Twitter account seem to contradict these claims, instead promising that "Men who use SuperSwipe are twice as likely to get a match" and "users who SuperSwipe are twice as likely to match!"[2]

5.      But even twice the number of matches is a gross exaggeration of the benefit that SuperSwipes provide. In reality, it appears that most men who use SuperSwipes see no increase in matches whatsoever. For example, on one internet website, several men complained:

> Posted by u/svn2cool 4 years ago
>
> ### Super Swiping: Is it lame? Does it work? Let's find out
>
> About 4-5 days ago I started an experiment to see if Bumble'd new super Swiping function actually worked. Super Liking on tinder was generally a frowned upon thing from most I talked to and read online, but there was a subset that said if you used it on the right women it would work.
>
> So just to see what would happen on here, I decided to buy a 5 pack and see if it could work... Well, in short, no... Not at all.

---

[2] Source: https://bumble.com/en-us/the-buzz/how-to-get-more-matches and https://twitter.com/bumble/status/978425990526521344, last visited January 21, 2022.

CLASS ACTION COMPLAINT

**NeedAcuteHispanicGf** · 19 days ago

Bumble superswipes are a scam, they do not show her that you superswiped her prior to her swiping on you. You arent even moved to the front of the deck. You skip maybe 10-20 profiles but there will be several that she sees before you. And yours looks ordinary, doesnt shine in gold colors saying you superswiped her. I tested it with two accounts and superswiped myself

⬆ 1 ⬇    💬 Reply   Share   Report   Save   Follow

[3]

Posted by u/omgitsmint 1 year ago

## Superswipe is BROKEN

So, I thought I'd give superswipes a go. Stupidly, I bought 30 instead of 2.

Anyway, now that I had 30 superswipes to use, I thought it would be a good idea to properly test it out.

Now, I only used all superswipes on high-quality profiles that appealed to me.

I gave everyone two weeks to check their profile.

How many matches did I get? Zero.

**[deleted]** · 3 yr. ago

Fuck super swipes.

I remember about a year ago buying like 25, and getting 1 match with a woman who ghosted me.

6 months later buying another 25, no matches.

[4]

**redi20** · 1 yr. ago

It's not the app and it's likely not you either.

After buying 30 SuperSwipes nearly every day for weeks, sometimes multiple 30's a day, I can say with authority that it's not worth it. And, yet, sometimes I see a spectacular woman and still throw my money away, hoping it will make a difference. 99% of the time it doesn't, but at least I know what to expect.

Bumble is designed for women to choose, and choose they do. If they're interested, they'll swipe you.

[5]

---

[3] Source: https://www.reddit.com/r/Bumble/comments/6s1l4c/super_swiping_is_lame_does_it_work_lets_find, last visited January 21, 2022.

[4] Source: https://www.reddit.com/r/datingoverthirty/comments/a8ei2u/if_you_use_bumble_what_are_your_feelings_on, last visited January 21, 2022.

[5] Source: https://www.reddit.com/r/Bumble/comments/kj0ihr/superswipe_is_broken, last visited January 21, 2022.

CLASS ACTION COMPLAINT

6.      Ironically, under some circumstances, SuperSwipes may actually harm a man's chances at matching with a woman. Normally, when a woman is viewing a man's profile, she has no way of knowing whether the man has swiped left or right on her. SuperSwipes eliminate that uncertainty by letting the woman know that the user whose profile she is viewing already 'SuperSwiped' on her. According to Bumble, SuperSwipes allows men to "make a bold first impression" and "tell a potential match you're confidently interested in them." Inadvertently, SuperSwipes also tell potential matches that the user spent a lot of money to make that impression.

7.      For example, in response to the question, "Ladies, Does Super Swipe make you consider someone more?" one woman responded:

 **haute-e** · 2 yr. ago

I used to right swipe on my super swipes but I realized it's dumb to right swipe on someone out of pity. Super swiping doesn't make me more likely to swipe right on you. If I'm interested, I'll swipe right, whether or not it's a super swipe or not

Another woman responded:

 **rocketjuiced** · 2 yr. ago

personally it it flattering, but also makes me less interested...

And yet another woman responded:

 **bloyy** · 2 yr. ago

It's desperate. It exudes neediness imo. Either the girl is attracted to you or not. A super swipe isn't going to magically make her interested [6]

8.      It appears Bumble recognizes that informing women that a man spent money on a premium feature might make that woman less—not more—attracted to the man. For that reason, in its Spotlight marketing, Bumble assures men that "you'll advance your profile to the top of the stack to be viewable by more people instantly *without anyone knowing*."[7]

---

[6] Source: https://www.reddit.com/r/Bumble/comments/cugrd8/ladies_does_super_swipe_make_you_consider_someone/, last visited January 1, 2022.

[7] https://bumble.com/help/what-is-spotlight (emphasis added), last visited January 21, 2022.

CLASS ACTION COMPLAINT

9.      Like numerous other Bumble users, Plaintiff purchased SuperSwipes and Spotlights believing he would receive significantly more matches and conversations. But like numerous other Bumble users, Plaintiff received no discernable benefit whatsoever. In bringing this lawsuit, Plaintiff intends to curb Bumble's false advertising. Plaintiff seeks public injunctive relief in the form of a court order prohibiting Bumble from continuing to make false claims about the benefits of SuperSwipes and Spotlights, and seeks compensation for himself and all others similarly situated who have been duped by Bumble's false advertising.

### THE PARTIES

10.      Plaintiff Harsh Alkutkar ("Alkutkar") is a resident of Daly City, California. On March 21, 2021, Alkutkar purchased a pack of SuperSwipes from within the Bumble app. On August 15, 2021 and September 9, 2021, Alkutkar purchased a pack of Spotlights from within the Bumble app.

11.      Defendant Bumble Inc. is a Delaware corporation, with its principal place of business at 1105 West 41st Street, Austin, Texas, 78756. Bumble Inc. operates the Bumble app on which Plaintiff purchased packs of SuperSwipes and Spotlights.

12.      Defendant Bumble Holding Limited is a corporation organized under the laws of the United Kingdom, with its principal place of business in London, United Kingdom. Bumble Holding Limited is a subsidiary of Bumble Inc. and is listed as the recipient of payments made on the Bumble app.

### JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate claims of the members of the proposed Class exceed $5 million (exclusive of interest and costs), the proposed Class consist of 100 or more members, and at least one member of the proposed Class is a citizen of a different state than Bumble.

14.      California has personal jurisdiction over Bumble because Bumble has sufficient minimum contacts with California, having intentionally availed itself of the California market through the promotion, marketing, and sale of services in California so as to render the exercise of

1    jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

2        15.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391

3    (b)(2) because a substantial part of the events or omissions which give rise to Plaintiff's claims

4    occurred in the county of San Mateo in California.

5        16.    Pursuant to the Northern District of California's Local Rule No. 3-2(e), assignment

6    of this matter to the San Francisco Division is appropriate because a substantial part of the events or

7    omissions which give rise to the claims asserted herein occurred in San Mateo County.

8                                 **FACTUAL ALLEGATIONS**

9        17.    Bumble launched its dating app in 2014, and today it is considered a leader in the

10   online dating sector across several countries, including the United States, United Kingdom,

11   Australia, and Canada. In 2020 alone, Bumble had approximately 1.1 million paying users on its

12   app and approximately $360 million in revenue.[8]

13       18.    The Bumble app utilizes a 'freemium' business model where it provides the basic

14   service to users for free while offering premium features for purchase. Users are induced to

15   purchase premium features on the premise that they will increase the probability or speed of

16   matching with other users.

17   **A.    SuperSwipes**

18       19.    According to Bumble, users can use SuperSwipe to inform potential matches that

19   they are confidently interested in them, whereas typically a right swipe—i.e., a 'like'—is

20   anonymous until both users swipe right.

21       20.    Bumble sells SuperSwipes in individual "Packs." As of the filing of this complaint, a

22   pack of thirty SuperSwipes costs $39.99; a pack of fifteen costs $22.99; a pack of five costs $9.99;

23   and a pack of two costs $5.99.

24   **B.    Spotlights**

25       21.    According to Bumble, users can use Spotlight to advance their profile to the top of

26   the list of potential matches so it is viewable by more potential matches instantly.

27   _____

28   [8] Source: https://www.sec.gov/Archives/edgar/data/0001830043/000156459021013176/bmbl-
     10k_20201231.htm, last visited January 22, 2021.

22.     Bumble sells Spotlights in individual "Packs." As of the filing of this complaint, a pack of thirty Spotlights costs $49.99, a pack of fifteen costs $29.99; a pack of five costs $12.99; and a pack of one costs $5.99.

**C.     <u>Bumble's False Claims</u>**

23.     Bumble induces users to purchase packs of SuperSwipes and Spotlights from within the Bumble app by advertising they will receive "Up to 10x more conversations" and "Up to 10x more matches," respectively. In reality, these features provide hardly any increase in conversations or matches, if any at all.

24.     The effect of "up to" advertising utilized by Bumble has been well-understood by marketers for several years. For example, a 2012 study sponsored by the Federal Trade Commission (FTC) examined how consumers interpret claims with and without an "up to" qualifier.[9] One group of respondents was presented with the claim that Bristol Windows were "proven to *save up to 47% on your heating and cooling bills*," and another group was presented with the same claim but without the "up to" qualifier—"proven to *save 47% on your heating and cooling bills*" (emphasis added).

25.     The study found that when respondents were later asked "*What did the ad say or suggest about Bristol Windows?*," between 36% and 46% of respondents in the "up to" group said the ad stated or implied a savings of 47% without mentioning the "up to" qualifier. Additionally, almost half of the respondents in the "up to" group said that half or more Bristol Windows users could expect to save about 47%. Interestingly, similar results were obtained for the group that was <u>not</u> exposed to "up to" qualifier. In other words, the data from the study "d[id] not support the hypothesis that the inclusion of an 'up to' qualifier would weaken the ad effects."

26.     The results from the study were used by the FTC in charging five window marketers for making misleading "up to" claims in their advertising. As part of the settlement, the window marketers agreed they would not make such claims unless "all or almost all consumers are likely to

---

[9] Available at https://www.ftc.gov/sites/default/files/documents/reports/effects-bristol-windows-advertisement-savings-claim-consumer-take-away-beliefs/120629bristolwindowsreport.pdf, last visited January 21, 2022.

1   receive the maximum represented savings or reduction."[10]

2         27.    More recently, the National Advertising Division (NAD), a division of BBB

3   National Programs, which oversees the truthfulness of advertising across the U.S., issued a decision

4   in 2020 against an installer of residential rooftop solar energy systems. The installer claimed that

5   consumers could "Save up to 20% on your electric bill" by switching to solar.[11] The NAD found

6   that while the claim "reasonably conveys the message that there may be variability in overall

7   savings," it also conveyed that "all or almost all individual consumers will save at least 20% by

8   switching to solar."

9         28.    Similarly, Bumble's advertising conveys that all or almost all users who purchase

10  packs of SuperSwipes or Spotlights will receive ten times the number of matches as a result of their

11  purchase. Discovery will show that this claim is false and that most users who purchase

12  SuperSwipes or Spotlights do not receive even a fraction of the benefit promised by Bumble.

13  **D.**     **Bumble's Ongoing False Advertising**

14        29.    As of the date of filing this complaint, Bumble continues to advertise false claims

15  about the benefits of its SuperSwipes and Spotlights.

16        30.    Plaintiff desires to purchase additional premium features on the Bumble app and

17  would make such purchases if he could be sure about the true benefits those features provide, as

18  advertised by Bumble.

19        31.    When purchasing features on the Bumble app, Plaintiff does not have access to

20  Bumble's data showing the actual benefits of the features he wishes to purchase, and thus has no way

21  of determining in the future whether Bumble has improved the effectiveness of its features or whether

22  Bumble is merely continuing to make false claims about their benefits.

23        32.    Without an injunction ordering Bumble to cease its false advertising, Plaintiff is

24  unable to rely on Bumble's representations regarding the benefits of its features in deciding whether

25

26  [10] *See* https://www.ftc.gov/news-events/press-releases/2012/02/window-marketers-settle-ftc-charges-they-made-deceptive-energy, last visited January 21, 2022.

27  [11] Source: https://bbbprograms.org/media-center/newsroom/nad-recommends-discontinuation-of-sunrun-s-national-save-up-to-20-on-your-electric-bill-over-the-term-of-the-contract-claim-finds-

28  sunruns-general-savings-claims-about-its-solar-service-are-supported, last visited January 21, 2021.

or not to make a purchase on the Bumble app in the future. Without such an injunction, there is a real and immediate threat Plaintiff will be wronged again in a similar way when making future purchases on the Bumble app.

**E.      Plaintiff Alkutkar's Purchase**

33.      On March 21, 2021, Alkutkar purchased a Pack of 15 SuperSwipes for $22.99. Bumble advertised that the SuperSwipes would provide "Up to 10x more conversations." Based on Bumble's advertising, Alkutkar believed he would receive ten times, or close to ten times, more matches and conversations than he usually received without the use of SuperSwipes. In fact, there was no discernable increase in the number of matches or conversations Alkutkar received as a result of using SuperSwipes. Discovery will show that if there was any increase in the number of matches and conversations, the increase was negligible and/or nowhere close to the 10x multiplier promised by Bumble.

34.      On August 15, 2021 and September 9, 2021, Alkutkar purchased a Pack of 5 Spotlights and a Pack of 15 Spotlights for $12.99 and $29.99, respectively. Bumble advertised that the Spotlights would provide "Up to 10x more matches." Based on Bumble's advertising, Alkutkar believed that he would receive ten times, or close to ten times, more matches than he usually receives without the use of Spotlights. In fact, there was no discernable increase in the number of matches Alkutkar received as a result of using the Spotlights. Discovery will show that if Alkutkar received any increase in the number of matches as a result of the Spotlights, the increase was negligible and/or nowhere close to the 10x multiplier promised by Bumble.

**CLASS ALLEGATIONS**

35.      Plaintiff brings this suit pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated. The Class is defined as follows:

> **Class:**   All persons who, on or after January 22, 2017, purchased a Pack of SuperSwipes or a Pack of Spotlights from within the Bumble app that were advertised to provide "Up to 10x more conversations" or "Up to 10x more matches."

36.      Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, directors, legal representatives, predecessors, successors, assigns, and employees, and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family

members.

37.    <u>Numerosity</u>:  Although the exact number of members of the Class is uncertain and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. Plaintiff is informed and believes there are tens of thousands, if not hundreds of thousands, of Class members who have been damaged by Bumble's false advertising alleged herein. The disposition of the claims of all Class members in a single action will provide substantial benefits to all parties and to the Court. The members of the Class are readily identifiable from information and records in Bumble's possession, custody, or control.

38.    <u>Commonality</u>:  This action involves common questions of law and fact, including, but not limited to, the following:

a.    whether Bumble made false or misleading statements in its advertisements pertaining to packs of SuperSwipes and packs of Spotlights;

b.    whether Bumble's advertisements had a tendency to mislead a reasonable consumer;

c.    whether Bumble's advertising and marketing practices, as alleged herein, violated established law;

d.    whether users who purchased packs of SuperSwipes received ten times, or close to ten times, more matches or conversations as a result of using SuperSwipes;

e.    whether users who purchased packs of Spotlights received ten times, or close to ten times, more matches as a result of their using Spotlights;

f.    whether users who purchased packs of SuperSwipes received any increase in the number of matches or conversations;

g.    whether users who purchased packs of Spotlights received any increase in the number matches;

h.    whether Bumble's statements concerning the benefits of SuperSwipes and Spotlights were material, such that a reasonable consumer would attach importance to and be induced to act on the information in determining whether to make purchase a pack of SuperSwipes or Spotlights;

i.      whether a reasonable consumer would interpret Bumble's SuperSwipe advertisement promising "Up to 10x more conversations" to mean that users would receive ten times, or close to ten times, more matches or conversations;

j.      whether a reasonable consumer would interpret Bumble's Spotlight advertisement promising "Up to 10x more matches" to mean that users would receive ten times, or close to ten times, more matches;

k.      whether Bumble misrepresented and/or failed to disclose material facts about the benefits of SuperSwipes and Spotlights;

l.      whether Bumble knew, or by the exercise of reasonable care should have known, that its claims about the benefits of SuperSwipes and Spotlights were untrue and misleading;

m.      whether Bumble intended its claims about the benefits of SuperSwipes and Spotlights to induce customers to purchase packs of SuperSwipes and Spotlights;

n.      whether Bumble's advertisements pertaining to the benefits of SuperSwipes and Spotlights—consisting of false claims about the increase in the number of matches and conversations they provide—were false or misleading within the meaning California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act.

o.      whether Bumble's misrepresentations about SuperSwipes and Spotlights alleged herein constitute "fraud," as that term is defined in California Civil Code section 3294(c)(3);

p.      whether Plaintiff and members of the Class are entitled to restitution, damages, and/or punitive damages as a result of Bumble's conduct alleged herein.

39.      Typicality:  Plaintiff's claims are typical of the Class claims in that Plaintiff, like all members of the Class, was deceived and damaged by Bumble's false advertisements. Furthermore, the factual bases of Bumble's false advertisements are common to all members of the Class and represent a common thread resulting in injury to the Class.

40.      Adequacy:  Plaintiff will fairly and adequately protect the interests of all members of

CLASS ACTION COMPLAINT

the Class, and Plaintiff's interests are coincident with and not antagonistic to those of other members of the Class. Plaintiff has retained competent counsel who are experienced in prosecuting class actions and will retain additional counsel as necessary.

41.     Class certification is appropriate under Rule 23(b)(2) because Bumble has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

42.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any question that may affect only individual members of the Class. Plaintiff and members of the Class have all suffered harm and damages as a result of Bumble's false advertising practices. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all members of the Class is impracticable because the cost of litigation would be prohibitively expensive given the relatively small size of the individual Class members' claims. Moreover, individualized litigation would impose an immense burden upon the courts and present the potential for varying, inconsistent, or contradictory judgments. By contrast, maintenance of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all members of the Class. Absent a class action, Plaintiff and members of the Class would be unable seek redress, and Bumble's false advertising would continue unabated without remedy or relief.

## FIRST CAUSE OF ACTION
### Negligent Misrepresentation

43.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

44.     Plaintiff brings this cause of action on behalf of himself and the Class.

45.     As alleged herein, Bumble made false representations and material omissions of fact to Plaintiff and Class members concerning the benefits of SuperSwipes and Spotlights.

CLASS ACTION COMPLAINT

46.     As part of those false representations, Bumble falsely claimed that users who purchased SuperSwipes would receive up to ten times more conversations and users who purchased Spotlights would receive up to ten times more matches.

47.     Bumble failed to disclose material facts regarding the above. Specifically, Bumble failed to disclose (i) what percentage of users, if any, actually receive ten times more conversations or matches, and (ii) what the actual increase in conversations or matches users receive.

48.     Bumble's false representations and omissions are the type of representations and omissions that are regularly considered to be material—i.e., a reasonable person would attach importance to them and would be induced to act on the information in making a purchasing decision.

49.     Bumble's false representations and omissions relating to the benefits of SuperSwipes and Spotlights are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

50.     Bumble's false representations and material omissions were made to Plaintiff and Class members for the purpose of affecting their decisions to purchase packs of SuperSwipes or packs of Spotlights.

51.     Bumble had no reasonable grounds for believing that its false representations about the benefits of SuperSwipes and Spotlights were true.

52.     Bumble failed to exercise reasonable care and/or diligence in making its false representations and material omissions to Plaintiff and Class members.

53.     Plaintiff and Class members reasonably and justifiably relied to their detriment on Bumble's false representations and material omissions.

54.     Bumble's false representations and material omissions were a factor in causing Plaintiff and Class members to purchase packs of SuperSwipes and Spotlights on the Bumble app.

55.     As a proximate result of Bumble's false representations and material omissions, Plaintiff and Class members were damaged in an amount to be determined at trial.

1

2

**SECOND CAUSE OF ACTION**
**Intentional Misrepresentation**

3      56.      Plaintiff incorporates by reference each of the allegations contained in the preceding

4    paragraphs of this Complaint.

5      57.      Plaintiff brings this cause of action on behalf of himself and the Class.

6      58.      As alleged herein, Bumble intentionally made false representations and material

7    omissions of fact to Plaintiff and Class members concerning the benefits of SuperSwipes and

8    Spotlights.

9      59.      As part of those false representations, Bumble intentionally and falsely claimed that

10   users who purchased SuperSwipes would receive up to ten times more conversations and users who

11   purchased Spotlights would receive up to ten times more matches.

12     60.      Bumble intentionally failed to disclose material facts regarding the above.

13   Specifically, Bumble intentionally failed to disclose (i) what percentage of users, if any, actually

14   receive ten times more conversations or matches, and (ii) what the actual increase in conversations

15   or matches users receive.

16     61.      Bumble's false representations and omissions are the type of representations and

17   omissions that are regularly considered to be material—i.e., a reasonable person would attach

18   importance to them and would be induced to act on the information in making a purchasing

19   decision.

20     62.      Bumble's false representations and omissions relating to the benefits of SuperSwipes

21   and Spotlights are objectively material to the reasonable consumer, and therefore reliance upon

22   such representations may be presumed as a matter of law.

23     63.      Bumble intended Plaintiff and Class members to rely on its false representations and

24   material omissions in deciding to purchase packs of SuperSwipes and Spotlights.

25     64.      Bumble knew that its intentional misrepresentations and material omissions were

26   false and misleading at the time Bumble made them and/or acted recklessly in making such

27   misrepresentations and omissions.

28     65.      Plaintiff and Class members reasonably and justifiably relied to their detriment on

Bumble's intentional misrepresentations and material omissions.

66.     Bumble's intentional misrepresentations and material omissions were a substantial factor in causing Plaintiff and Class members to purchase packs of SuperSwipes and Spotlights from Bumble.

67.     As a proximate result of Bumble's intentional misrepresentations and material omissions, Plaintiff and Class members suffered an ascertainable loss and are entitled to compensatory and punitive damages, in an amount to be determined at trial.

68.     In making intentional misrepresentations and material omissions to Plaintiff and Class members, Bumble acted with malice, oppression, and fraud.

69.     Bumble's conduct alleged herein constitutes "fraud," as that term is defined in California Civil Code section 3294(c)(3), because such conduct involved intentional misrepresentations, deceit, and/or concealment of material facts known to Bumble, and was done with the intent to cause Plaintiff and Class members to purchase packs of SuperSwipes and Spotlights they would not have otherwise purchased.

## THIRD CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, *et seq.*

70.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

71.     Plaintiff brings this cause of action on behalf of himself and the Class.

72.     Plaintiff is a "consumer" within the meaning of California Civil Code section 1761(d).

73.     Bumble violated, and continues to violate, California Civil Code section 1770(a)(5) by representing that services offered for sale within the Bumble app have benefits which they do not have. Specifically, Bumble misrepresents that users who purchase SuperSwipes and Spotlights will receive ten times more matches and conversations.

74.     Pursuant to California Civil Code section 1782(a), Plaintiff's counsel intends to send notice to Bumble by certified mail detailing its particular violations of Section 1770 of the CLRA, as alleged above, and demanding that it rectify such violations by (i) giving notice to all affected

customers, (ii) removing the false claims about the benefits of SuperSwipes and Spotlights from its app, and (iii) providing restitution and damages to Plaintiff and Class members.

75. Pursuant to California Civil Code section 1782(d), if Bumble fails to rectify, or fails to agree to rectify, its violations of Section 1770 within thirty (30) days of receiving Plaintiff's letter, Plaintiff will move to amend this complaint to pursue claims for actual, punitive, and statutory damages under the CLRA. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

**FOURTH CAUSE OF ACTION**
**Violation of the False Advertising Law (FAL), Cal. Bus. & Prof. Code §§ 17500, *et seq.***

76. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

77. Plaintiff brings this cause of action on behalf of himself and the Class.

78. Plaintiff brings this cause of action for public injunctive relief pursuant to California Business and Professions Code section 17535 and seek an order enjoining Bumble from continuing to violate California Business and Professions Code section 17500. Plaintiff is entitled to this forward-looking relief because there is no adequate remedy at law that would protect Plaintiff, Class members, and the public at large from Bumble's ongoing violations of Section 17500.

79. Plaintiff additionally brings this cause of action for restitution pursuant to California Business and Professions Code section 17535. Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks restitution in the alternative to the damages he seeks in his first through third causes of action. Plaintiff is entitled to restitution because he lacks an adequate remedy at law; the legal remedies available to him are not as equally prompt and certain, and in other ways efficient.

80. Bumble has violated, and continues to violate, California Business and Professions Code section 17500 by disseminating untrue and misleading advertisements through its app to Plaintiff and Class members.

81. Bumble disseminated untrue and misleading advertisements by advertising false claims about the benefits of SuperSwipes and Spotlights.

82.     Bumble disseminated such untrue and misleading advertisements with the intent to induce Plaintiff and Class members to purchase packs of SuperSwipes and Spotlights.

83.     Bumble knew, or by the exercise of reasonable care should have known, that the claims about the benefits of SuperSwipes and Spotlights were untrue or misleading.

84.     Bumble fraudulently concealed from and intentionally failed to disclose to Plaintiff and Class members the truth about the benefits, or lack of benefits, of SuperSwipes and Spotlights. Specifically, Bumble failed to inform Plaintiff and Class members that (i) SuperSwipes do not actually provide users with ten times, or close to ten times, the number of matches or conversations, and (ii) Spotlights do not actually provide users with ten times, or close to ten times, the number of matches. Had Bumble disclosed this information to Plaintiff and Class members, they would not have purchased the packs of SuperSwipes and Spotlights, or would have paid less for them.

85.     Plaintiff and Class members reasonably relied on Bumble's representations and/or omissions made with regard to the benefits of SuperSwipes and Spotlights, and were induced to purchase SuperSwipes and Spotlights based on the belief that they were receiving a feature that would provide ten times more matches and/or conversations than they would otherwise receive.

86.     Bumble's representations and/or omissions made in connection with its SuperSwipes and Spotlights were likely to deceive reasonable consumers by misrepresenting the true benefits, if any, of SuperSwipes and Spotlights.

87.     Had Plaintiff and Class members known that SuperSwipes and Spotlights do not provide the advertised benefit, they would not have purchased products from Bumble or would have paid less for them.

88.     As a direct and proximate result of Bumble's untrue and misleading advertising, Bumble has improperly acquired money from Plaintiff and Class members. As such, Plaintiff requests this Court order Bumble to restore this money to him and all Class members.

89.     Bumble's violations of Section 17500 are ongoing because it continues to advertise to Plaintiff, Class members, and the public at large false claims about the benefits of Super Swipes and Spotlights. Unless restrained by this Court, Bumble will continue to engage in untrue and misleading advertising, as alleged above, in violation of Section 17500. Accordingly, Plaintiff seeks

an injunction enjoining Bumble from continuing to violate Section 17500.

**FIFTH CAUSE OF ACTION**
**Violation of the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

90.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

91.     Plaintiff brings this cause of action on behalf of himself and the Class.

92.     Plaintiff brings this cause of action for public injunctive relief pursuant to Section 17203 of the Business and Professions Code and seeks an order enjoining Bumble from continuing to violate California's Unfair Competition Law. Plaintiff is entitled to this forward-looking relief because there is no adequate remedy at law that would protect Plaintiff, Class members, and the public at large from Bumble's ongoing violations of California's Unfair Competition Law.

93.     Plaintiff additionally brings this cause of action for restitution pursuant to California Business and Professions Code section 17203. Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks restitution in the alternative to the damages he seeks in his first through third causes of action. Plaintiff is entitled to restitution because he lacks an adequate remedy at law; the legal remedies available to him are not as equally prompt and certain, and in other ways efficient.

94.     Bumble has violated, and continues to violate, the "unlawful" prong of the UCL by engaging in the following unlawful business acts and practices:

     a.     disseminating untrue and misleading advertisements within the Bumble app about the benefits of SuperSwipes and Spotlights, in violation of California Business and Professions Code section 17500; and

     b.     representing that SuperSwipes and Spotlights have benefits which they do not have in violation of California Civil Code section 1770(a)(5).

95.     Bumble has violated, and continues to violate, the "fraudulent prong" of the UCL by engaging in the following fraudulent business acts and practices:

     a.     making false claims about the benefits of SuperSwipes and Spotlights, such that Plaintiff and Class members were likely to be deceived.

96. Bumble has violated, and continues to violate, the "unfair" prong of the UCL by engaging in the following unfair business acts and practices:

      a. engaging in false advertising in connection with the sale of SuperSwipes and Spotlights such that Plaintiff and Class members, who could not have reasonably avoided such predatory schemes, have been injured—a practice that serves no benefit to consumers or competition; and

      b. engaging in false advertising whereby the harm to consumers and the public at large far outweighs any utility of the advertising, which only serves to mislead consumers into purchasing worthless features on the Bumble app.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests this Court order the following relief and enter judgment against Bumble Inc. and Bumble Holding Limited as follows:

A. An order certifying that this action may be maintained as a class action, that Plaintiff be appointed representative of the Class, and Plaintiff's counsel be appointed Class Counsel;

B. An order enjoining Bumble from continuing to violate in the future California's Consumer Legal Remedies Act, False Advertising Law, and Unfair Competition Law, as described herein;

C. A judgment awarding Plaintiff and Class members actual and punitive damages in an amount to be determined at trial or, in the alternative, equitable monetary relief including, without limitation, restitution and disgorgement of all money Bumble improperly acquired from Plaintiff and Class members as a result of its false advertising and unlawful, unfair, and fraudulent business practices;

D. A judgment awarding Plaintiff costs of suit; including reasonable attorney's fees pursuant to California Civil Code section 1780(d), Code of Civil Procedure section 1021.5, and as otherwise permitted by statute;

E. Pre- and post-judgment interest; and

F. Such other and further relief as may be necessary or appropriate under the circumstances.

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2        Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local

3    Rule 3-6, Plaintiff demands a jury trial on all triable issues.

4

5    Dated:  January 22, 2022               Respectfully submitted,

6

7
                              By:   /s/ Daniel A. Rozenblatt
8                                 _____
                                  Daniel A. Rozenblatt (SBN 336058)
9                                 Seth W. Wiener (SBN 203747)
                                  EDGE, A PROFESSIONAL LAW CORPORATION
10                                1341 La Playa Street 20
                                  San Francisco, CA 94122
11                                Telephone: (415) 515-4809

12                                Attorneys for Plaintiff
                                  HARSH ALKUTKAR
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT