UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARSH ALKUTKAR,<br>　　　　Plaintiff,<br>　　v.<br>BUMBLE INC., et al.,<br>　　　　Defendants. | Case No. 22-cv-00422-PJH<br><br>**ORDER DENYING RECONSIDERATION**<br><br>Re: Dkt. No. 53 |

Before the court is plaintiff's motion for reconsideration of the order compelling arbitration. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## **BACKGROUND**

Plaintiff sued defendants for violations of consumer protection laws based on defendants' allegedly misleading advertisements regarding the special features available for purchase in the Bumble online dating app. Dkt. 1. Defendants responded by simultaneously moving to dismiss the complaint and moving to compel arbitration. Dkt. 28, Dkt. 30. Following briefing of both motions and a hearing, the court granted defendants' motion to compel arbitration. Dkt. 49. Plaintiff requested, and was granted, leave to file a motion for reconsideration. Dkt. 50, Dkt. 52. Plaintiff filed the instant motion seeking reconsideration of the order compelling the parties to arbitration. Dkt. 53. Defendants oppose reconsideration. Dkt. 54.

## DISCUSSION

Under Civil Local Rule 7-9(b), a party may request that a court reconsider a prior order if there is a "manifest failure by the court to consider material facts or dispositive legal arguments presented prior the subject order." Civ. L.R. 7-9(b)(3). Reconsideration is an extraordinary remedy that should be granted only in "highly unusual circumstances." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

In his motion, plaintiff contends that the court

> committed clear error by (1) applying a preponderance standard of review rather than the correct summary judgment standard of review; (2) failing to consider how Plaintiff's evidence creates a triable issue of material fact; (3) failing to consider Plaintiff's demand for a jury trial pursuant to 9 U.S.C. § 4; and (4) failing to consider and rule on Plaintiff's evidentiary objections to Defendants' evidence.

Dkt. 53 at 3. The court analyzes—and rejects—each reason below, though in a different order.

### 1. Standard of Review and Standard of Proof

First, plaintiff argues that the court applied the wrong standard in deciding the motion to compel arbitration, that the court should have applied the summary judgment standard of Rule 56 rather than a preponderance of the evidence standard. The party seeking to compel arbitration bears the burden to "prove the existence of a valid agreement by a preponderance of the evidence." Knapke v. PeopleConnect, Inc., 38 F.4th 824, 832 (9th Cir. 2022) (quoting Wilson v. Huuuge, Inc., 944 F.3d 1212, 1219 (9th Cir. 2019)). And in considering whether an arbitration agreement was formed, "The summary judgment standard is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980)).

Here, plaintiff incorrectly conflates the standard of proof with the standard of review by arguing that the court applied one rather than the other. Both standards govern a motion to compel arbitration: courts apply the preponderance standard as the standard of proof and the summary judgment standard as the standard of review. Bumble had the burden to establish by a preponderance of evidence that clicking through the Blocker Card was the act of plaintiff necessary to show that he electronically signed and agreed to the updated Terms. After considering the parties' arguments and evidence, and construing facts and reasonable inferences in favor of plaintiff as is required under the summary judgment standard of review, the court concluded that Bumble showed "by a preponderance of evidence that clicking through the Blocker Card was 'the act of' plaintiff necessary to show that he electronically signed and agreed to the updated Terms, including the Arbitration Agreement." Dkt. 49 at 16. Plaintiff's argument that the preponderance standard is irreconcilable with the summary judgment standard of review is hard to comprehend given, as defendant notes, the number of times that plaintiff refers to the preponderance standard in his own papers. See, e.g., Dkt. 32 at 12 ("Bumble cannot show by a preponderance of the evidence that Plaintiff assented to the updated Terms."). Therefore, this argument is rejected.

**2.     Jury Trial Demand**

Second, plaintiff's conflation of the standard of review with the standard of proof dovetails with another argument he makes in support of reconsideration. Plaintiff argues that the court failed to consider his jury trial demand pursuant to Title 9 U.S.C. § 4. However, in its determination that Bumble met its burden to show assent to arbitration, the court necessarily found that there was no triable issue of material fact. See Fed. R. Civ. Pro. 56. Without a genuine dispute of material fact, there was no triable issue to submit to a jury. Therefore, the court did not err on this ground either.

**3.     Consideration of Plaintiff's Evidence**

Third, the court reached the conclusion that there was no triable issue of material fact in part because the evidence submitted by plaintiff did not suffice to create a triable

3

issue, and it is from this angle that the court considers the third issue raised by plaintiff—the court's consideration of his evidence.  Plaintiff submits that there was a genuine dispute of material fact that precluded the court's conclusion where he denied that he viewed and clicked on the Blocker Card.  Specifically, the evidence included two declarations submitted by plaintiff.  In the first declaration, dated May 14, 2022, he declares that:

- "I never viewed the Blocker Card and clicked an orange-colored 'I agree' button.  If I had viewed the Blocker Card and clicked 'I agree' on March 4, 2021, I believe I would recall doing so" (Alkutkar Decl. ¶ 4);
- "The first time I recall signing in to the Bumble app after January 18, 2021 was in March 2021" (id. ¶ 5); and
- "During the time I had the Bumble app installed on my phone, others have had access to my phone and have used it" (id. ¶ 8).

Dkt. 32-2 at 2–3.  In the second declaration, dated July 6, 2022, plaintiff clarified that he "unequivocally den[ies] that [he] viewed and clicked to agree to the Blocker Card," and that he was speaking hypothetically when he said in his earlier declaration that if he had clicked the button, he believes that he would recall doing so. Dkt. 44-1 at 2.  It is difficult to reconcile these two alternatives—that plaintiff did not see the Blocker Card either (1) because it did not appear, contrary to defendants' evidence, or (2) because someone else using his phone saw it and clicked the "I agree" button.  By offering these two alternatives, plaintiff equivocates and thus fails to create a triable issue against defendants' evidentiary showing.

Bumble's evidence that plaintiff first accessed the app after January 18, 2021, on March 4, 2021, is consistent with plaintiff's claim that he first accessed the app after January 18, 2021, in March 2021.  Wong Decl. ¶¶ 17–18 (Dkt. 36-1 at 7).  Defendants' evidence also shows that activity in plaintiff's account in the app on March 4, 2021, included the addition of photos and the swiping of profiles of potential dates, and in March, August, and September 2021, the purchase of the premium features that are the

subject of this lawsuit. Wong Decl. ¶ 18 (Dkt. 36-1 at 7). These facts are uncontroverted by plaintiff's evidence because if it is true, as plaintiff declared, that other people had access to his phone and may have clicked the "I accept" button on the Blocker Card, his argument that Bumble did not present the Blocker Card is mere speculation. He wouldn't know one way or the other whether the Blocker Card appeared if other people accessed the app through his phone on March 4, 2021. As for plaintiff's argument that defendants could not prove that it was plaintiff and not someone else using plaintiff's phone who clicked the button, the court is not persuaded by plaintiff's self-serving declaration with no corroborating evidence on this point.[1] This alternative explanation that someone else clicked "I accept" on the Blocker Card, if corroborated, might have created a triable issue.

Instead, plaintiff relies on his uncorroborated, self-serving declaration and the declarations of several other users who also declare that they didn't see the Blocker Card when they first opened the Bumble app in April or May 2022. Alkutkar Decl. ¶ 4 (Dkt. 32-2 at 2); Autry Decl. ¶ 5 (Dkt. 32-3 at 2); Bothman Decl. ¶ 5 (Dkt. 32-4 at 2); Keysar Decl. ¶ 6 (Dkt. 32-5 at 2); Krakirian Decl. ¶ 5 (Dkt. 32-6 at 2); Pawell Decl. ¶ 6 (Dkt. 32-7 at 2). Most of these declarations suffer from the same hedge as plaintiff's—they report that other people used the declarants' phones, suggesting someone else may have clicked through the Blocker Card appearing upon the sign-in to their accounts without their knowledge or consent. See id. But further, while these declarations might have some probative value on the issue of whether there was a recent glitch in the Blocker Card technology resulting in the Blocker Card not working as it was supposed to more than a year after plaintiff first re-accessed the Bumble app, they are not probative of what plaintiff experienced in March 2021. Plaintiff admits that he accessed the app in March

---

[1] This is a claim that would have been easy to corroborate. Plaintiff could have submitted declarations from the other users of his device simply explaining that they saw (or did not see) the Blocker Card when they opened the app. The other user(s) of plaintiff's device also could have explained that they were responsible for posting new photos to plaintiff's account, swiping on profiles, and purchasing premium features for him. Plaintiff could even have just named the other users and provided the dates they used his phone and accessed his Bumble account. But he submitted nothing.

5

1   2021 and provides no corroboration that the Blocker Card was not working as intended
2   then. The court is left only with a self-serving declaration that he did not see the Blocker
3   Card. This is insufficient. See, e.g., Villiarimo v. Aloha Island Air, 281 F.3d 1054, 1061
4   (9th Cir. 2002) ("this court has refused to find a 'genuine issue' where the only evidence
5   presented is 'uncorroborated and self-serving' testimony."); FTC v. Publishing Clearing
6   House, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking
7   detailed facts and any supporting evidence, is insufficient to create a genuine issue of
8   material fact."). Thus, although plaintiff avers that there was a genuine dispute of
9   material fact as to whether he viewed and clicked on the Blocker Card, consideration of
10  the inconsistent and contradictory statements in plaintiff's declarations precludes finding
11  a genuine dispute.

12  **4.     Objections to Defendants' Evidence**

13  Finally, plaintiff argues that the court committed error by failing to consider his
14  objections to defendants' evidence. Plaintiff objected to the Chheena Declaration on the
15  following bases: lacks foundation; hearsay; lacks personal knowledge FRE 602; lacks
16  authenticity FRE 901; violates best evidence rule FRE 1002. Dkt. 32 at 31. Plaintiff
17  objected to the Wong Declaration on the same bases: lacks foundation; hearsay; lacks
18  personal knowledge FRE 602; lacks authenticity FRE 901; violates best evidence rule
19  FRE 1002. Dkt. 40 at 3-6.

20  As noted above, a court ruling on a motion to compel arbitration reviews the
21  evidence on the same standard as for summary judgment under Rule 56. See Navarro v.
22  SmileDirectClub, Inc., No. 22-CV-00095-WHO, 2022 WL 1786582, at *5 (N.D. Cal. June
23  1, 2022) (citing Tabas v. MoviePass, Inc., 401 F. Supp. 3d 928, 936 (N.D. Cal. 2019)).
24  "On a motion to compel arbitration . . . the Court 'does not focus on the admissibility of
25  the evidence's form,' so long as the contents are capable of presentation in an admissible
26  form at trial." Lomeli v. Midland Funding, LLC, No. 19-cv-01141-LHK, 2019 WL 4695279,
27  at *7 (N.D. Cal. Sept. 26, 2019) (quoting McKee v. Audible, Inc., No. 17-cv-1941, 2017
28  WL 7388530, at *4 (C.D. Cal. Oct. 26, 2017)); accord Hughes v. United States, 953 F.2d

531, 543 (9th Cir. 1992) (district court could base its grant of summary judgment in part on government employee's affidavit despite hearsay and best evidence rule objections). "Objections on the basis of a failure to comply with the technicalities of authentication requirements or the best evidence rule are, therefore, inappropriate." McKee, 2017 WL 7388530, at *4.

In light of this authority, the court concludes that plaintiff's boiler plate objections need not be sustained. In this circuit, a court must rule on material evidentiary objections. Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010). In the order granting the motion to compel, the court implicitly overruled plaintiff's objections and expressly does so now. Plaintiff's evidentiary objections are OVERRULED.

## CONCLUSION

For the foregoing reasons, the court DENIES reconsideration of its order. The parties must proceed to arbitration. The lawsuit is STAYED pending completion of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: November 16, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge

7